Thank you, Your Honor. May it please the Court, Paul Moore on behalf of Appellant and Cross Appellee Plasterers, Local 200. And I would like to reserve five minutes of time here at the outset. The Regional Director in this case is not saying that Local 200 state court lawsuits should merely be dismissed. He's arguing something that is far more radical and hostile to petition clause values. He's saying that these lawsuits should be branded illegal under the NLRA, should be enjoined as unfair labor practices, and that Local 200 should be required to pay the other side's attorneys' fees. Counsel, it's possible for such an injunction to be issued if the object of the lawsuits is an illegal object under the labor laws. Do you agree with that proposition? Your Honor, there is the footnote 5 to the Bill Johnson's case which does say that if a lawsuit has an illegal objective, that it may be enjoined. So how does one determine, just first of all as a theoretical matter, whether a lawsuit has an illegal objective within the meaning of that footnote, and then taking that standard that you would write for us, how does it apply here? Well, let me first answer your question and say what footnote 5 stands for and what the cases cited in footnote 5 stands for, and then I'll say why the Regional Director's theory for what footnote 5 stands for simply cannot stand. It's unsustainable. The cases that were cited in footnote 5 by the Bill Johnson's court did not involve adjudications of whether a lawsuit was an unfair labor practice under the National Labor Relations Act. They did not involve an adjudication and a determination that a lawsuit was illegal and that civil penalties should be attached to it. The illegal objective cases that were cited in Bill Johnson's Granite State and the Booster Lodge case both involved situations in which a union had imposed unlawful fines on nonmembers for crossing a picket line. That was the violation of the National Labor Relations Act. The Supreme Court merely said in those cases that as a remedy for the, those violations of the Act, those independent violations of the Act, the Board was authorized to enjoin enforcement suits to collect those fines. That is not the situation here. The situation here is that the Regional Director is arguing, and the district court held, that this core petitioning activity is itself a violation of the National Labor Relations Act. Well, I'm not sure that that answers my question. Is it your theory, then, that a lawsuit cannot have an illegal objective unless the prayer for relief in the lawsuit is itself unlawful? In other words, like the fine that can't be levied. A lawsuit may not be held to have an illegal objective under Footnote 5 unless there is an independent predicate violation of the Act, and the Board is simply seeking to remedy that independent predicate violation of the Act. The reason why this is so is because in DE&K construction, the Supreme Court held that a lawsuit may not be held to violate the Act and may not be held to be outside of the First Amendment merely because it has an improper purpose under the NLRA. In that case, an employer had brought a lawsuit against workers for attempting to organize. The lawsuit was clearly brought for an improper purpose under the Act. The Court held so, and it brought to retaliate against workers. Despite that fact, despite the fact that this lawsuit violated, would have otherwise violated Section 8A1 of the National Labor Relations Act, it was retaliatory, the Supreme Court said, no, we're not going to hold that this lawsuit is outside of the First Amendment unless the employer has no legal merit. It is core petitioning, and it's protected by the First Amendment. The regional director's argument here is a misconstrual of Footnote 5, and it simply cannot stand for three reasons. First, as I've said, it does not follow from the language of Footnote 5. Footnote 5 did not involve lawsuits that were independently held to violate the Act. It did not involve lawsuits that violated the NLRA. It was merely a question of how could the board remedy an independent contractual or union bylaw violation of the NLRA. The second reason why the regional director's interpretation of Footnote 5 cannot stand is that it's contrary to this circuit's own precedent. In the ILWU Local 32 v. Pacific Maritime case, which was decided shortly after Bill Johnson's, this Court was faced with an identical issue to the one that's before the Court now. That is, is a union's lawsuit a violation of Section 8B.4.2d of the Act? Now, this Court first ruled that the lawsuit was brought for an improper purpose under the Act. It was brought for the purpose of evading a jurisdictional award. But this Court didn't stop there. This Court didn't say, well, because it's brought for an improper purpose under the Act, because it would otherwise be unlawful under the NLRA, we're going to rule it to be a violation of the Act. It went on and applied the First Amendment standard and looked at the question of whether the lawsuit had a reasonable basis in law. Right. But wouldn't these two State court actions not have a reasonable basis in law because the net effect would be to impact the jurisdictional award previously ruled? That is, that if you prevail in those State court actions, that look, maybe I should put it the other way. You can't prevail in those State court actions because the State court is unlikely to rule that you're entitled to that work, given that the NLRB has already had a jurisdictional opinion awarding the work to the Carpenters. In order to be unreasonable, or what is now known as objectively baseless under the Act, Supreme Court precedent is clear that the lawsuits have to be frivolous. This stems from the antitrust Knorr-Pennington doctrine, where petitioning that is a sham is not protected by the First Amendment. That is a Rule 11 standard. Well, in the – in the – I guess that really begs the question that Judge Wardlaw is asking, which is whether you use the label frivolous or use the label baseless or objectively unreasonable, however you want to use that label, why isn't it one of those things when the Board has already held definitively that your client is not entitled to perform the work? Because, Your Honor, no court has held that a Section 10k award, which is a preliminary decision, we're not even able to appeal that decision at this point. No court has held that a Section 10k award displaces a State prevailing wage lawsuit, a wage and hour lawsuit, or a lawsuit like the tortious interference lawsuit. But don't you look through what the lawsuit claims to see what the result is? And then that would be counter to how the NLRB has previously ruled. Your Honor, the way that Bill Johnson's and D&K must be applied here is to look at whether these lawsuits are so clearly barred by a 10k award as to be frivolous. And that simply is not the case. There – there has – there is not one case cited in the Regional Director's briefs in which a State prevailing wage lawsuit, which on their public works job, is deemed to conflict with a 10k award. The remedy in that lawsuit would not conflict with the 10k award. So even if it were the case that there were a conflict between the 10k award and those lawsuits, which there is not, they are not so clearly controlled by established precedent as to be frivolous. The effect of ruling otherwise in this case would be effectively to have one rule that applies to an employer's retaliatory lawsuit. And, you know, in that case, the employer's retaliatory lawsuit might clearly violate the Act. It might clearly be retaliatory. And yet the Supreme Court held that despite that fact, despite the fact that this is not frivolous, could not be held to be an unfair labor practice. Well, let me ask you this. Does your client believe that it's bound by the NLRB's jurisdictional award? That's a good question. And I think that it – what it goes to is what exactly is this 10k award. A section 10k … If you're bound, how are you bound? A section 10k jurisdictional award is a preliminary determination of which union should get the work. It was established. It's a non-APA proceeding. It's not a final order of the board. It can't be appealed to this circuit or another circuit. It's not conducted before a hearing officer. It's an attempt that was set up in the law to get the parties to settle. So at this point, and the Plasterers Local 79 case, a Supreme Court case from the early 70s, holds quite clearly no one's bound by a preliminary 10k decision. It's preliminary. So at this point, we are not bound by it. When you characterize it as preliminary, what do you mean it's preliminary? What's the next step? The next step, Your Honor, is the Section 8b-4-2d determination. And that is an independent, unfair labor practice proceeding before the National Labor Relations Board that is pending now. In that … What's the status of that matter at the moment? Is it still pending? It's still pending. And the board has not ruled on whether these State court lawsuits violate Section 8b-4-2d. And most notably, on remand in the BE&K decision, the National Labor Relations Board itself got the message from the Supreme Court and laid down a categorical rule that only a lawsuit that is objectively baseless, that is frivolous in a Rule 11 sense, and that would otherwise violate the Act or that is brought for an improper purpose … In this context, it seems to me there may be a distinction to be made, and perhaps opposing counsel can reach this also, between the tortious interference case and the wage and hour case. The tortious interference case seems to me, as I read it, to be basically a direct attack on what the board has done in the sense of saying, hey, this was our work. You know, this was our work, and you guys tried to come in here and get our work. But the board has held that it isn't your work, and so it seems to me quite a direct attack. The wage and hour claims, I'm not so sure about. But do you think there's an analytical distinction to be made between the two? I think that the prevailing wage lawsuit is an easy case. And the tortious interference lawsuit, I'll explain why it doesn't conflict with the 10K award, and then I'll explain why, even if it did, it would have to conflict in such a clear way and under such clearly established precedent as to be frivolous. The prevailing wage lawsuit is a lawsuit that's brought under California Labor Code, Section 1777.5, which provides expressly that public works contractors must hire state-registered apprentices on their jobs. This is a lawsuit to enforce that prevailing wage law. Right, but, I mean, obviously what the board said was since Local 200 is the only one that has the apprentices during that particular period of time, that the It's the equivalent of what they were saying. Yes, and there are two reasons why that argument really can't stand. There are actually three positions that the regional director has taken. The first is that because prior to November 2006, the Plasterers Union co-sponsored the only state-registered apprenticeship program, that that somehow makes this into a jurisdictional matter. But it doesn't. Well, it does in fact. I mean, it doesn't literally, but if the only aim of these lawsuits is to say legally you were required to let us have this work because we're the only ones with the apprentices or you have interfered with what we used to have or any other theory, the whole point of it is to get the work to the Plasterers. Well, in response to that question, first of all, to be a state-registered program has nothing to do with which union sponsors or anything of that matter. I know. I'm talking practicalities. The only practical result, if you want, would be to wrench the work away from carpenters. Not anymore, Your Honor, because of the second problem with this theory, which is that since November 2006, before the Section 10K awarded issue here, the carpenters now have their own state-registered program. Right. But at the time that you filed the lawsuit, it was only the Plasterers who had the work. But what's being alleged here, Your Honor, is that that lawsuit conflicts with a 10K award that didn't come down until December 2006. Right. So how are you modifying your claim in that lawsuit? You want back pay for the apprentices that you think should have been hired out of Local 200? Well, the claim is that injunctive relief in that lawsuit somehow would coerce the employer here. And that's simply can't be, because the employer now can hire its apprentices from either program. So you should withdraw the lawsuit, because clearly they can do it without you. We have claims from prior to the 10K award. There was a full two years in which this employer failed to hire apprentices from a state-registered program. So you answered my question that you weren't seeking to be compensated for that period of time, but you are. Otherwise, it would be nothing to this lawsuit. Correct, Your Honor. However, seeking to be compensated for a period prior to a 10K award even came down, how can that coerce the employer for the period afterward when they can hire during that time apprentices from either program? How can there be a conflict with the 10K award for seeking remedies for violations clear violations of the law prior to the period when the 10K award even came down? Right. That's a good question. So I think I'll ask the opposing counsel that question. But even if this were the case, even if it were the case that the prevailing wage lawsuit could be seen, despite all of these arguments, to conflict with the 10K award, this court has held previously. There is no well-established body of precedent that Local 200 could have looked to and said, well, yes, clearly filing this lawsuit would be frivolous. And that is the standard that this court adopted in the ILW Local 32 case. That's the standard that is required under BNK. The lawsuit can't simply be foreclosed. I mean, again, the regional director is not intervening in these lawsuits and saying dismiss these lawsuits. He's not saying that a particular remedy after the liability phase is finished might conflict, and so I'll seek to stay in enforcement of that. He's asking for a ruling that these lawsuits are illegal and that despite the fact that they're reasonably based, that Local 200 should pay the entire attorney's That is a severe burden on petitioning, and it's one that simply can't be imposed after BNK. Now, on the tortious interference lawsuit, again you want to reserve three minutes and you're already providing, so you're already two minutes over. If you would like, Your Honor, to respond on the tortious interference lawsuit, I'll do that. Otherwise, I'll let you. I think we're probably ready to hear from the other side. Okay. Thank you. May it please the Court, Richard Lussier on behalf of the Labor Board. I'd like to reserve two minutes for counsel for amicus SDI. This case is not novel. The federal courts have routinely enjoined lawsuits attacking board section 10-K decisions, including this court in Local 32. Before I leave this question, your opposing counsel said that they had filed the wage and hour lawsuit before the 10-K came down. Correct. So how does that action seek to undo the 10-K jurisdictional award? Well, what happens, the award comes down in December of 2006, awarding the work to the Carpenters. It's the continued prosecution of the lawsuit that violates the act. It's lawful up until the time that the board acts. At the time the board acts, pursuant to ferret, the board's 10-K decision takes precedence. Well, it almost has to be that way, because if the board just dawdled and never acted, then the state court could do whatever it does. Correct. And actually, it's important to keep in mind here, too, is the board must act to resolve these disputes. Pursuant to radio engineers, the Supreme Court made it clear that the board has a duty to resolve these disputes. Well, then perhaps maybe the district court even went too far in joining the action  to petition. Perhaps he should have just enjoined them pending the final determination of the NLRB. That's exactly what the district court did. He did that? This is only a temporary injunction. Correct. The permanent injunction is not going to happen until the board acts. So this is just pending the board act, pending it being filed. So all this argument about it's preliminary. It is. Everything's preliminary, including the injunction, is what you're saying. Correct. The whole purpose of this litigation was to stop the suit pending the board's resolution of the AP4IDID unfair labor practice charge. Because, I mean, if I follow this through, if the board ultimately concludes that there's an unfair labor practice here, then the lawsuits have to go away because their only purpose is to contradict or is to enforce an unfair labor practice at that point. But if there's no unfair labor practice, boom, the cases go forward. Absolutely. That's correct. And at the time the board rules, if that is the outcome, this injunction is dissolved as a matter of law. So then carry it forward. So what is the exact status of the proceedings? Right now we have a decision by the board's administrative law judge finding that the lawsuits, as well as certain other conduct, violated Section AP4IDID. Those litigations are currently pending on exceptions before the board right now. So this injunction is in place until the board issues a final ruling on the ALJ's decision. And then once the board issues a final ruling, would that be subject to review by a circuit court of appeals? Absolutely, yeah. Okay. Yeah, under the substantial evidence standard of review. And actually the 10-K award is also part of that mix, and it's reviewed under an even more deferential standard of arbitrary and capricious on legal matters. With regard to Bill Johnson's and the enjoining of lawsuits, as I was saying at the outset, this is not novel. And in this court, in Local 32, the case cited by the Plasters, ironically, is evidence of that. There, this court found that the lawsuits that had an illegal objective of attacking a board 10-K award were necessarily baseless, and didn't go into any type of inquiry into the merits of those lawsuits per se, looking at any claims, looking at any evidence that says, no, it's necessarily baseless because you are attacking an extant board mandate. And the D.C. Circuit in Longshoreman, footnote 12, interpreted this Court's decision in Local 32 to say exactly that. It says, no, you don't have to look at whether or not the lawsuit is reasonably baseless. It's saying that, in fact, that this Court was not looking at whether the lawsuit was reasonably baseless. It was, in fact, finding that it was necessarily baseless. And B and K did not change footnote 5 in Bill Johnson's. B and K did not address footnote 5. No, it was a post hoc look after the lawsuit had already happened. Well, it was a different type of lawsuit. Yes. It was a lawsuit that footnote 5 involves essentially two classes. You have your preempted lawsuits slash your illegal objective under Federal law lawsuits. And you were asking the question, Judge Graber, earlier what illegal objective really means. It's as defined in Rite Aid by the board enforced by the Third Circuit. An illegal objective is where the board has previously ruled on a given matter and the lawsuit is aimed at achieving a result that is incompatible with the board's ruling. I.e., it's a lawsuit you can't win, no matter what evidence you come forward with, no matter how benevolent your motives, you simply cannot carry the case. And so to follow that through, you would not make any distinction between the wage-hour lawsuit and the tortious interference, even though the wage-hour has a little bit of a different twist to it. I would not, because it's equally as coercive, number one. And number two, it's unlawful because, again, it's violated before double ID by the continued prosecution of that litigation after the 10K award came down. The fact that it started earlier is really irrelevant. It's the fact that they continued it after the board acted that made it, morphed it into an illegal action. And the district court, unfortunately, did not go far enough in this case. It enjoined the two lawsuits, and that was an excellent start. And it originally ordered a broad in any manner cease and desist order to prevent any further other before double ID violations attacking the board's 10K award. Unfortunately, the district court reversed course, citing First Amendment concerns, and retracted Section 1C. That is really a problem in this case. Well, I can understand why the district court would do that, because it's vague and kind of overbroad. If you don't, just hear me out, if you don't have some concrete action. But, of course, if there was some other concrete thing, you could always go back to Judge Larson and get the injunction modified. That's true. You could go back, but that's not the most effective way. You're allowing essentially coercion to take place, and then you have to go into court. There's a time lag. Well, the problem is you can't just enjoin vague conduct. But, see, it's not vague. It incorporates labor law principles enunciated by the board. It incorporates First Amendment principles enunciated by this Court and the Supreme Court. It's like any other injunction. It doesn't lay out every single aspect of the law. Well, injunctions need to put the enjoined party on fair notice of what will violate the injunction because they're subject to contempt for violation of order, you know, all sorts of things. True. But this particular provision does not encompass any protective activity. It does not encompass any protective speech or any protective petitioning. It would only encompass activity that violates Section 8E4 double I.D. That's it. Pursuant to extant principles. And that's as far as Section 1C would go. And that's no further. There would not be any First Amendment conflict. And, actually, I think it's important to note that we've been here before. Again, this is not novel. The Board in Otis Elevator found issued a cease and desist order, a broad cease and desist order, virtually identical to Paragraph 1C in this case. This is not anything new. And that order was enforced by this Court in an unpublished opinion. So it's the reason why it's important is we have serious harms in this case. That are threatened. And those harms. Where are they? The harms, they're, first of all, at some point, the SDI may, in fact, reassign the work to the flasters. Simply because the cost of the ongoing litigations, they may just get worn down. So that's a harm, is that a harm to the carpenters that you're asserting? Actually, this is a harm to the Board's remedial authority. And it's a harm to interstate commerce. Because if they reassign the work, the carpenters have repeatedly said that they will strike SDI. Well, it's also a harm to the employer. The whole point of 10K is to take the employer who's in interstate commerce and say, hey, I've got to get somebody to do this work. And I can't afford in time and money to have this conflict. And so I need certainty and I need to be able to do business henceforth without looking back. So it seems to me that a large piece of the harm in any situation in which a 10K award is not lived by is to the employer who's in interstate commerce. Absolutely. There's no doubt that that is a large part. I mean, we also have, since it is a 10L injunction, there's public harm that has to also be established as well. And we certainly have that here by the threat to commerce. And even more, going along the same lines, with regard to harm to the employer, what if we have a conflicting judgment in favor of the plasters issued by the state court? What's the employer to do? We're going back to C right now? So we're at C that was? No, well, these are just the harms that are threatened by the lack of paragraph 1C. And essentially this court said in Local 32 that the employer would be between the devil and the deep blue. Well, I understand harm to the employer. I completely understand that. Okay. All that. What I'm asking now is why is 1C necessary to prevent that harm? Because it prevents these further attacks. It prevents the plasters from at some point saying, okay, I give up. I've had enough. I'm giving the work. I'm sorry, the SDI from giving work to the plasters because at some point they cry uncle. Well, it prevents filing more lawsuits. It prevents 1C. Absolutely. Doesn't it also prevent things that are reasonable and not baseless? It only prevents lawsuits and other things that are not constitutionally protected. And it violates Section 8B4ID. It prevents threatening or coercing the employer to try to get the work from the carpenters. Correct. And that's the thrust of 8B4ID. Correct. So essentially if you had these conflicting mandates, the employer would be in a tough spot. And what's it to do? It's facing contempt by a state court or it's facing a strike by the carpenters. It's not a good spot. And the board's final order, the whole point of this injunction, the board's final order when it comes down, it's going to be too late. These harms are going to be done. There's nothing the board can do about it. And the board's remedial authority will be frustrated. So your point of view on 1C is that anything that threatens, coerces, or restrains will cause these harms. So the language in any manner or by any means, there can't be any reasonable or lawful manner or means. Only means which violate 8B4ID would be swept into the lawsuit. So sending threatening letters would do it, filing another lawsuit would do it. Whatever under extant board and court law would be an 8B4ID violation would be prohibited under 1C. I see I've gone over the end. Well, actually, we've got 10 seconds left. If there are any further questions, I'm happy to answer them. If not, I would like to leave the rest of my time to counsel for standard drywall. Thank you. Good morning, Your Honors. My name is Mark Bennett, and I represent the amicus standard drywall. And I will keep my comments brief and hopefully within my two minutes. Well, you asked about Section 1C. And you've taken official notice of a new plan complaint and award that was came out just about a week or so ago. Now, the administrative law judge in this case said the local 200 is not to go back to the plan. It's very clear on that, in order to get plastering work. Well, they don't care what the administrative law judge says, and they don't care what the board says. They're going to go back and do whatever they're going to do. And that's what they do. And it's just basically thumbing the nose at the board and the administrative law judge by going back to the plan. Now, Mr. Moore talked about that there's no longer an issue in the wage and hour lawsuit about using apprentices. If you look on page ER-244, paragraph 39 of the third amended complaint filed on January 15, 2008. Which paragraph? I'm sorry. 39. That's a little over a year after the carpenters program was approved. Mr. Moore is still in state court arguing we haven't hired apprentices from a state-approved program. In a sense, he only represents the local 200 program. He can only be still suing us because we're not hiring apprentices from his program. And that's on page, as I say. It's in his third amended complaint filed after the carpenters was approved. Don't, and please, don't look, ignore the fact on the wage and hour lawsuit. The board looked at the nature of that lawsuit and twice said it was jurisdictional in nature because of what it was asking for. And that finding is entitled to deference because it's in the 10-K decision. But it also looked at the fact that on two occasions, local 200 representatives went to Standard Drywall and said, you've signed with us and we'll drop it. So it shows not only the nature of the lawsuit's coercive, but that the union is using it coercively to get us to assign the work. And that should go in all three of the decisions, Standard Drywall I, the first 10-K, the second 10-K, and the administrative law judge's decision. Also, counsel is, ignores the fact that in the P&A case, there were two parts of that case. And in the second part of that case, the Ninth Circuit employed a traditional footnote 5 analysis. It said, you know, aside from Bill Johnson's, there are certain types of cases, no matter how much in good faith the party is, you just can't win because it seeks to undermine the 10-K award. And also in the P&A case, the board said the fact that the board, the board 10-K is not subject to res judicata doesn't mean that you don't have to obey it. It says that it's, we have the supremacy doctrine in the Ninth Circuit which says you've got to abide by the 10-K award regardless, even though it's not, it's not a final order yet. And I see that I've gone over my time. I believe I've gone over my time. So thank you. Thank you. So I'll use what time I have left to make three points. First, on this Circuit's precedent, the ILW Local 32 v. P&A case, I urge you to look at that case. The Court at 773 F. 2nd, 1015 states, It did not hold, this Court did not hold that a union's lawsuit that is alleged to conflict with the 10-K award falls within footnote 5. There is no reference to footnote 5 anywhere in the opinion. It did not hold that that lawsuit is outside of First Amendment protection.  to enforce the arbitrator's award. And in fact, there are two or three pages in the Federal Reports in which the Court looked at whether the union's lawsuit had a reasonable basis in law. That is the subject heading of those sections. It analyzed that question, and looking to what Mr. Bennett refers to, the supremacy doctrine, it held, no, under a well-established line of cases dating from the Kerry v. Westinghouse case in 1964, this lawsuit was foreclosed. Well, that line of cases applies only to private arbitration awards and attempts to enforce private arbitration awards. This Court has never held that that line of cases applies to State court petitioning. I urge you to look carefully at that case because it has been, it has really been either misconstrued or misrepresented in these proceedings. So this Court would be departing from the ---- Can I ask you what is the harm to Local 200 from leaving the injunction in place given that what you're seeking in the wage and hour suit is past compensation, right? There are several harms, Your Honor. And let me speak to that quickly first in general terms and then on paragraph  two. In general terms, the harms are, A, that this is First Amendment petitioning and we're being prevented from doing it, even for a short period of time, that's an irreparable harm. But second, we're not talking about a brief stay here of a month or even a year. We've put in the record our statistics about how long it takes for a case to make its way through the board proceedings. Counsel, is an unfair labor practice that happens to be done with words protected speech? If you came up and said, I'm going to kill you if you vote for that union, or is that protected speech or not? Yes, it is, Your Honor. Under BE&K construction, a lawsuit ---- I didn't ask you about a lawsuit. I'm asking whether, in your view, words that constitute an unfair labor practice are protected speech. Your Honor, the question of what speech constitutes an unfair labor practice is ---- You're really not wanting to answer my question. I mean, I don't understand whether you're trying to argue that even if it's an unfair labor practice, it's protected speech, or that it's protected until it's proved through the process that it is an unfair labor practice. Which is your position? We're arguing, Your Honor, that these lawsuits may only be held under BE&K construction to be unfair labor practices if they are both contrary to the Act in traditional terms and frivolous as a matter of law. That still doesn't answer my question. Once they are held, if they are held, under whatever standard, to be unfair labor practice, to be an unfair labor practice, would you concede that that is no longer constitutionally protected? If the Court ---- if the board and the courts were to apply the correct constitutional standard and hold them ---- I'm seeking to, Your Honor, and I apologize if I sound evasive. But in some ways, the question puts the cart before the horse. Clearly, if the lawsuit under a proper standard is held to be an unfair labor practice, it is not protected by the Petition Clause. Okay. So the only real issue here, it seems to me, isn't ---- it's almost a procedural issue. It's whether if something appears to be an unfair labor practice until final adjudication, whether it can be halted pending a determination that it is, in fact, an unfair labor practice. That's right. Right? That's right, Your Honor.  And if the district court had applied the correct constitutional standard and looked to these ---- whether these, as B&K and Bill Johnson's required it to do, and looked to whether these lawsuits are clearly foreclosed as a matter of law in determining whether they are objectively baseless, then that would have been the right approach. But that's not what was done. The district court said, I don't have to answer this question at all. Now, if I could speak very briefly on paragraph 1C, because I think it's quite important that there are several problems with this, in addition to the irreparable harm that it poses to Local 200. One is that it's enjoining conduct that was not part of the petition that the regional director put to the district court, was not litigated by the parties. No other conduct other than these two State court lawsuits was at issue. So we had no notice and certainly no due process hearings. Isn't that a pretty standard thing, though, when the ---- at least when the board issues a decision? It will categorize all the things that have happened and then say, and don't do anything else that violates Section 8A1 or whatever it happens to have violated. It isn't standard. In fact, this Court has reversed the board for attempting to include in injunctions a conduct that was never planned or litigated on two occasions, the Nelson case cited in our brief and the Johanson case cited in our brief. And the regional director hasn't mentioned these cases or sought to distinguish them. But there's another point here. The regional director is saying, well, just don't do anything that violates Section 8B42D. Well, this is a ---- and, in fact, the Supreme Court and this Court in Overstreet has said ---- But it didn't say it that way. It said stop threatening and coercing in order to force people to give you the work. Which is a verbatim what 8B42D bars. Right. But it's not a number. It's more specific than a number. It didn't simply ---- you're correct. It didn't simply say don't violate 8B42D. It paraphrased the language of that provision, language which this Court and the Supreme Court in the DiBartolo case has said is extremely vague. We don't know prior to contempt proceedings what conduct is being enjoined here. This is a prior restraint on ---- and apparently it goes to other types of petitioning, does not conflict with the 10-K award, is not unreasonable at law, the first time that we learn otherwise will be contempt proceedings. So I think the district court was certainly correct for numerous reasons. The vagueness of the injunction, the fact that none of the issues had been litigated, and the fact that, effectively, this is a prior restraint on First Amendment conduct in striking that part of the injunction. So, again, I think that the issue of what standard to apply here, what constitutional standard is required for the Board to prove that state court lawsuits violate the National Labor Relations Board is one that this Court should take a careful look at, its own precedent in Local 32, and certainly both the Bill Johnson's case and the B&K Construction case say that the Board may not, the regional director may not do what it's attempting to do here, which is to say if your lawsuit violates the Act, if your lawsuit has an improper purpose under the Act, it has no First Amendment protection at all. Thank you. We'll pick up the next matter.
judges: Trott, Kleinfeld, Fisher